Joseph G. Pia (9945) (joe.pia@piahoyt.com)
Ciera Kimmerer (17159) (ckimmerer@piahoyt.com)
PIA HOYT, LLC
170 South Main Street, Suite 1100
Salt Lake City, UT 84101
Telephone: (801) 350-9000
Facsimile: (801) 350-9010

Goerge Calhoun (*pro hac vice* forthcoming) (george@ifrahlaw.com)
Kim Conroy (*pro hac vice* forthcoming) (kconroy@ifrahlaw.com)
Abbey E. Block (*pro hac vice*) (ablock@ifrahlaw.com)
Katherine Kovalsky (*pro hac vice* forthcoming) (kkovalsky@ifrahlaw.com)
Robert W. Ward (*pro hac vice*) (rward@ifrahlaw.com)
IFRAH PLLC
1717 Pennsylvania Avenue NW, Suite 650
Washington, D.C. 20006
Telephone: (202) 524-4140
Fax: (202) 524-4141

*Attorneys for Defendant Gold Coin Group LLC*

---

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| JERRY KELSCH, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br> v. <br><br> GOLD COIN GROUP LLC, <br><br> Defendant. | **DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS** <br><br> Case No. 2:25-cv-00995-DBB-JCB <br><br> District Judge David Barlow <br><br> Magistrate Judge Jared C. Bennett |

Defendant Gold Coin Group LLC, by and through undersigned counsel, respectfully moves this Court to compel arbitration of all claims asserted by Plaintiff Jerry Kelsch, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–16, and the agreement between the parties. In support of its Motion, Gold Coin Group states the following.

## INTRODUCTION

When Plaintiff created an account on Gold Coin Group's social gaming website Chanced.com (the "Platform"), he agreed to resolve all disputes related to his use of the Platform through binding, individual arbitration. Despite having thirty days to consider whether to decline or accept the arbitration agreement, Plaintiff never notified Defendant that he wished to opt out and allow either party to file claims in court. Nor can Plaintiff identify any basis to permit him to disavow his contractual obligations now. The parties agreed to arbitrate not only the substance of claims, but also questions of validity, enforceability, arbitrability, and scope. Therefore, even these threshold legal issues must be decided in arbitration. Under the Federal Arbitration Act, the Court must therefore enforce the parties' agreement, compel arbitration, and stay proceedings pending resolution of Plaintiff's claim in binding, individual arbitration.

## I.      FACTUAL BACKGROUND

### A.  Plaintiff creates a Chanced.com account and agrees to arbitrate.

Defendant Gold Coin Group LLC owns and operates Chanced.com and Punt.com, two online, free-to-play, social gaming websites. (Declaration of Erick Pullen ("Pullen Decl.") ¶ 4) To access and play games on either website, users must create a website-specific user account. (Pullen Decl. ¶ 8)

To create an account, new users must accept the Platform's Terms of Use and Privacy Policy through a clickwrap agreement. (*Id*. ¶ 9) New users accept the Terms by checking a box

1

confirming that he or she is at least 18 years of age and has read and accept the Platform's Terms. (*Id.*) As illustrated below, the registration screen makes the Terms immediately available to the user through a hyperlink. If a user fails to check the box confirming that he or she agreed to the Terms, the Platform does not allow the individual to proceed further in the account-creation process. (*Id.*) Users who do not affirmatively accept the Terms are not permitted to access or play the Platform's games. (*Id.*)



**Image 1 – Chanced.com Registration Screen[1]**

Plaintiff created an account on Chanced.com on November 28, 2024.[2] (Pullen Decl. ¶ 14.) Like all new users, Plaintiff was required to enter certain personal information and complete the registration process. (*Id.* ¶ 16.) Plaintiff could not have created his account without checking the box affirming that he read and accepted the Terms. (*Id.*)

---

[1] Pullen Decl., Ex. C.

[2] Although Plaintiff seeks to represent Utah users of both Chanced.com and Punt.com in his Complaint, (Compl. ¶ 1), Defendant has no record of Plaintiff ever creating an account on Punt.com. (Pullen Decl. ¶ 6.) While this raises questions about Plaintiff's ability to represent the proposed class, for the purposes of this motion, what matters is that Plaintiff agreed to arbitrate under the Chanced.com Terms.

At all times relevant to this dispute, the Terms have included a conspicuous arbitration agreement. When users click the hyperlink to view the Terms, the Terms immediately alert the user to the arbitration agreement and their right to opt out:

PLEASE NOTE THAT THESE TERMS AND CONDITIONS INCLUDE A PROVISION WAIVING THE RIGHT TO PURSUE ANY CLASS, GROUP OR REPRESENTATIVE CLAIM AND REQUIRING YOU TO PURSUE PAST, PENDING, AND FUTURE DISPUTES BETWEEN YOU AND US THROUGH INDIVIDUAL ARBITRATION UNLESS YOU OPT OUT WITHIN THE SPECIFIED TIME FRAME. SEE CLAUSE 24 FOR MORE INFORMATION.

(Terms at 1.) When users scroll down to clause 24, they are once again directed to:

**PLEASE READ THIS CLAUSE 24 CAREFULLY BECAUSE IT MAY REQUIRE YOU AND GOLD COIN GROUP LLC TO ARBITRATE CERTAIN DISPUTES AND CLAIMS ON AN INDIVIDUAL BASIS AND LIMITS THE MANNER IN WHICH YOU AND Gold Coin Group LLC CAN SEEK RELIEF FROM EACH OTHER.**

(*Id.* § 24).

Under the arbitration agreement, Defendant and its users agree to arbitrate, among other things, "[a]ny and all past, present and future disputes, claims or causes of action . . . arising out of or relating to the Platform and Games . . . or any other dispute between you and Gold Coin Group LLC. . . ." (*Id.*) This broad language encompasses both statutory and tort claims, along with "any other legal or equitable theory," including disputes as to the validity, enforceability or scope of the arbitration agreement. (*Id.*) Further, the agreement calls for arbitration to be administered by JAMS under its Streamlined Rules. (*See id.* § 24.4)

The arbitration agreement is not a "take-it-or-leave it" proposition. New users have thirty days to consider whether to decline the arbitration agreement without losing access to the Platform. (Terms § 24.) To decline the arbitration agreement, a user need only send email notice to Defendant within thirty days. (*Id.*) If the user chooses to "opt out" of arbitration, neither the user nor Defendant may invoke the mutual agreement to resolve disputes in arbitration. (*Id.*) Defendant has

3

no record of receiving an opt-out notice from Plaintiff, and the time for him to opt out expired on December 28, 2024. (Pullen Decl. ¶ 20).

### B. Plaintiff disregards the parties' agreement and files a putative class action.

Nevertheless, on November 2, 2025, Plaintiff commenced this putative class action, violating the terms of the arbitration agreement and class-action waiver to which he agreed when he created his account. In his complaint, Plaintiff erroneously characterizes the Platform as an "unlawful gambling enterprise" and seeks to recover under Utah Code § 76-9-1412 "twice the amount of economic losses" incurred by himself and the members of his proposed class stemming from their gameplay on the Platform. (Compl. ¶ 2, Prayer for Relief ¶ D, Dkt. No. 1). Defendant disputes Plaintiff's allegations. But, as the parties agreed, this dispute must be resolved in binding, individual arbitration.

### II.      LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs the enforceability of arbitration agreements in contracts involving interstate commerce. *Avedon Engineering, Inc. v. Seatex*, 126 F.3d 1279, 1286 (10th Cir. 1997). Under section 2 of the FAA, written agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Lewis v. Circuit City Stores, Inc.*, 500 F.3d 1140, 1148 (10th Cir. 2007) (citing 9 U.S.C. § 2).

Courts analyze motions to compel arbitration under a framework akin to summary judgment. *See BOSC, Inc. v. Bd. of Cnty. Comm'rs of Cnty. of Bernalillo*, 853 F.3d 1165, 1177 (10th Cir. 2017). The party moving to compel arbitration "bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement and the opposing party's failure, neglect, or refusal to arbitrate." *Id.* If the moving party carries this burden, the

nonmoving party must raise a genuine dispute of material fact regarding the existence of or the party's failure to comply with an agreement. *Id.* When "a quick look at the case" reveals no material disputes of fact, the Court may "decide the arbitration question as a matter of law" through motion practice while viewing the facts in the light most favorable to the nonmoving party. *Id.*

### III.    ARGUMENT

#### A.  Plaintiff Agreed to Arbitrate Any and All Disputes with the Company.

A court addressing a motion to compel arbitration must first determine whether the parties formed an enforceable agreement to arbitrate. *Brayman v. KeyPoint Gov't Solutions, Inc.*, 83 F.4th 823, 832 (10th Cir 2023); *Pagano v. NordicTrack, Inc.*, 749 F. Supp. 3d 1183, 1189 (D. Utah 2024). To determine whether the parties agreed to arbitrate, courts generally apply "ordinary state-law principles" of contract formation. *Walker v. BuildDirect.com Techs., Inc.*, 733 F.3d 1001, 1004 (10th Cir. 2013).

Under Utah law, the proponent of the contract must establish "'an offer, an acceptance, and consideration' by a preponderance of the evidence." *Pagano*, 749 F. Supp. 3d at 1190 (quoting *Cea v. Hoffman*, 276 P.3d 1178, 1185 (Utah Ct. App. 2012)).[3] "An acceptance is a manifestation of assent to an offer, such that an objective, reasonable person is justified in understanding that a fully enforceable contact has been made." *Cea v. Hoffman*, 276 P.3d 1178, 1185 (Utah Ct. App.

---

[3] The Terms include a governing law provision calling for the application of Wyoming law. (Terms § 25.21.) Because choice of law would not affect the outcome, for the purposes of this motion only, Defendant analyzes contract formation under Utah law. *See Brunson v. Lenzi*, No. 2:24-cv-00767, 2025 WL 786699 a *4 (D. Utah March 12, 2025) (determining that there was no conflict of law in deciding a motion to compel arbitration where both potential applicable laws enforced clickwrap agreements). Wyoming law requires an offer, acceptance, and valuable consideration and treats clickwrap agreements as valid contracts. *Kindred Healthcare Operating, Inc. v. Boyd*, 403 P.3d 1014, 1024 (Wyo. 2017); *compare* Pagano, 749 F.Supp.3d at 1190 (enforcing clickwrap agreement under Utah law), with *Zheng v. Halliburton Energy Services, Inc*. No. 23-CV-00098-ABJ, 2023 WL 7538331 at *6 (D. Wyo. October 30, 2023) (enforcing clickwrap agreement under Wyoming law).

2012). These requirements apply equally to agreements formed online, *see Route App, Inc. v. Heurberger*, No. 2:22-CV-291-TS-JCB, 2022 WL 2316377, at *2 n. 7 (D. Utah June 28, 2022) (collecting cases), and all are present here.

To start, there was both an offer and an acceptance. Defendant's offer is straightforward: it would disclaim its right to pursue litigation in exchange for Plaintiff's promise to do the same. When Plaintiff created an account, he took an affirmative step to indicate that he accepted the offer. Specifically, he checked a box confirming acceptance and agreement to the Terms. By doing so, Plaintiff accepted the arbitration agreement, subject to the right to opt out within thirty days. He then let the time to opt out expire, further indicating he accepted Defendant's offer. The process by which Plaintiff accepted the Terms therefore reflects the elements of offer and acceptance.

Courts routinely enforce such "clickwrap" agreements. In *Pagano*, for example, this Court enforced an arbitration agreement where the evidence showed that the plaintiffs signed up for the defendant's service, which they could do only because they "physically clicked a checkbox accompanied by language," in standard-size, contrasting text, "signaling that [they] had 'read and agreed to [the] Terms of Use.'" *Pagano*, 749 F. Supp. 3d at 1190. Because the defendant's registration process provided conspicuous notice and allowed the plaintiffs to review the terms "for as long as they chose," the plaintiffs' act of checking the box next to the notice manifested their assent to the terms. *Id.*

All of the features that established offer and acceptance in *Pagano* are present here. Plaintiff could not register without physically checking a box accompanied by language indicating that he had read and accepted the Terms. (Pullen Decl. ¶ 16.) This notice appeared in standard-size, contrasting text, and allowed Plaintiff to review the Terms for as long as he wished before physically checking the box and creating his account. (*Id.* ¶ 10.)

Not only that, users who clicked the Terms link were immediately informed that disputes related to the Platform would be resolved in binding, individual arbitration. In bold, capitalized text, the Terms direct users to the arbitration provision and highlight users' ability to opt out. The arbitration provision itself is similarly distinct, with capitalized and bold headers and text. (Pullen Decl. Ex. D § 24.) The arbitration agreement was "available to read, easy to find, and made plain that claims [relating to the platform] would be settled by binding arbitration." *Penhall v. Young Living Essential Oils, LC*, 2022 WL 15504063, at *6 (D. Utah Oct. 27, 2022). Accordingly, when Plaintiff created his Chanced.com account, he "affirmatively manifested assent" to the Terms and the arbitration agreement within them. *Pagano*, 749 F. Supp. 3d at 1190.

Finally, the arbitration agreement is also supported by consideration. Consideration is present whenever there is a promise to either receive a benefit or suffer a detriment, however slight. *Cea v. Hoffman*, 276 P.3d 1178, 1186 (Utah Ct. App. 2012). Because both Plaintiff and Defendant agreed to resolve disputes in arbitration, forgoing their right to a jury trial, (Terms § 24), the arbitration agreement is supported by adequate consideration. *See id.*

Because Plaintiff and Defendant both agreed to arbitrate their disputes when Plaintiff created his account, the parties formed a valid and enforceable agreement to arbitrate.

**B. The parties delegated all questions of arbitrability, validity, enforceability, and scope to the arbitrator but even if they had not, the Court should resolve any such question in favor of arbitration.**

After determining that an arbitration agreement exists, courts generally determine whether the "agreement covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson,* 561 U.S. 63, 71 (2010). But where the parties have clearly and unmistakably delegated this question to the arbitrator, courts must respect the parties' decision and refer any such question of arbitrability to arbitration. *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1292–93 (10th Cir. 2017). The parties here

7

have done just that. But even if the parties had left questions of scope to the Court, the result would be the same: Plaintiff must arbitrate his claim.

### i. *Plaintiff and the Company delegated all questions of validity, enforceability, and scope to the arbitrator.*

Plaintiff cannot escape his obligations to arbitrate by challenging the validity, enforceability, or scope of the agreement. Because the parties agreed to arbitrate all disputes, including disputes as to validity, enforceability, and scope, the Court need not—indeed, cannot—resolve these questions. The Court generally decides issues of arbitrability, unless the parties "clearly and unmistakably" indicate their intent to delegate threshold issues to the arbitrator. *Belnap*, 844 F.3d at 1280 (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010)); *Baugh v. Allied Prof. Ins. Co.*, No. 1:18-cv-00074-DB-EJF, 2019 WL 1358855, at *4 (D. Utah Mar. 26, 2019). When evidence of the parties' clear and unmistakable intent to delegate the gateway issue of arbitrability is found, the court "possesses no power to decide the arbitrability issue" even "if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Brayman v. KeyPoint Gov't Solutions, Inc.*, 83 F.4th 823, 831 (10th Cir. 2023) (internal quotation marks omitted) (quoting *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 68 (2019)).

Here, the arbitration agreement is unequivocal—the arbitrator, not a court, is to resolve any and all disputes over the "enforceability, validity, scope, or severability of this agreement to arbitrate." (Terms § 24). The agreement's plain language therefore demonstrates the parties' clear and unmistakable intent to delegate authority to the arbitrator. *See Brayman*, 83 F.4th at 833–34; *Baugh*, 2019 WL 1358855, at *4 (parties delegated threshold issues to the arbitrator when arbitration clause delegated "any questions" concerning the "scope" or the "arbitrability of any dispute or claim" to the arbitrator).

This language, standing alone, establishes that the parties clearly and unmistakably delegated the issue of arbitrability to the arbitrator. But the parties made their intentions clear in another way: by incorporating the JAMS Rules into the arbitration agreement. (Terms § 24.4) Incorporating the JAMS Rules into an arbitration agreement is evidence of the parties' intent to delegate threshold issues to the arbitrator. *See Belnap*, 844 F.3d at 1281 (holding that the parties "clearly and unmistakably agreed to arbitrate arbitrability when they incorporated the JAMS Rules into the Agreement.") Like the JAMS Rule in *Belnap*, JAMS Streamlined Rule 8(b) expressly states that "the Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." JAMS Streamlined Arbitration Rules & Procedures r. 8(b).

Because the unambiguous language of the parties' agreement and the parties' express incorporation of the JAMS Rules into the agreement establish the parties' clear and unmistakable intent to delegate all questions of arbitrability to the arbitrator, the Court must decline to address these questions and refer them to arbitration.

### ii. The arbitration agreement covers Plaintiff's claims.

But even if arbitrability challenges were for the Court to decide, Plaintiff would still be required to submit his claims to arbitration. To determine whether the arbitration agreement encompasses a particular claim, the Court must determine whether the arbitration agreement is broad or narrow. *See Chelsea Family Pharm., PLLC v. Medco Health Sol'ns, Inc.*, 567 F.3d 1191, 1199 (10th Cir. 2009). Agreements to arbitrate disputes "relating to" a particular subject matter are "broad," *id.*, and create a presumption of arbitrability, *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005). To overcome this presumption, Plaintiff must present "forceful evidence" of intent to exclude a particular dispute from arbitration. *In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1202 (10th Cir. 2016).

Plaintiff cannot do so. Plaintiff broadly asserts that the Platform "is actually" an "unlawful gambling enterprise" and alleges that he, and the members of the proposed class, seeking to recover the "significant sums" of money allegedly lost by spending money on the Platform. (Compl. ¶¶ 2-3, Prayer for Relief ¶ D). Because Plaintiff's claim arises out of his use of the Platform, it "relates to" the Platform and its games. *See Chelsea Family Pharm.*, 567 F.3d at 1199 (enforcing arbitration agreement where alleged harm related to issue facially within scope of arbitration clause). The arbitration agreement therefore encompasses Plaintiff's claim. *See In re Cox Enters., Inc.*, 835 F.3d at 1202.

### C.  The Court Should Stay this Action Pending Resolution of Plaintiff's Claims in Arbitration.

Because all of Plaintiff's claims must be resolved in binding, individual arbitration, the Court should stay this action pending the outcome of arbitration. The Convention requires courts to stay an action "upon being satisfied that the issue involved . . . is referable to arbitration." 9 U.S.C. §§ 3, 208(a) (Chapter 1 of the FAA applies to actions brought under the Convention); *Smith v. Spizzirri*, 601 U.S. 472, 476–78 (2024).

### IV.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court compel arbitration of Plaintiff's claim and stay this action pending resolution of the dispute in arbitration.

Dated: June 1, 2026

Respectfully submitted,

/s/ *Joseph G. Pia*
Joseph G. Pia
Ciera A. Kimmerer

**PIA HOYT LLC**

George Calhoun
Kim Conroy
Robert W. Ward
Abbey Block
Katherine Kovalsky
**IFRAH PLLC**

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I, Melanie Buervenich, hereby certify that on this 1st day of June, 2026, I caused the Defendants' Motion to Compel Arbitration and Declaration in Support to be filed via the Court's electronic filing system, which will transmit a notice of electronic filing to all counsel of record.

*/s/ Melanie Buervenich*
Licensed Paralegal Practitioner